UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN S. M.,[1] <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO,[2] <br> Commissioner of Social Security, <br><br> Defendant. | Case No.: 2:24-cv-06995 ADS <br><br><br> MEMORANDUM OPINION AND ORDER |

## I. **INTRODUCTION**

Plaintiff ("Plaintiff") challenges Defendant Frank Bisignano, Commissioner of Social Security's (hereinafter "Commissioner" or "Defendant") denial of his application

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.
[2] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted for Martin J. O'Malley as the defendant.

for disability insurance benefits ("DIB"). Plaintiff contends that the Administrative Law Judge failed to properly develop the record, address the combination of Plaintiff's impairments in the residual functional capacity ("RFC") assessment, apply the Medical-Vocational Guidelines, identify other jobs that could be performed consistent with the combination of Plaintiff's impairments, and consider Plaintiff's subjective symptom testimony. (Docket ("Dkt.") No. 13 at 7-18.) For the reasons stated below, the decision of the Commissioner is affirmed, and this matter is dismissed with prejudice.

## II.   FACTS RELEVANT TO THE APPEAL

A review of the entire record reflects certain facts relevant to this appeal. Plaintiff was born on August 2, 1961, has a bachelor's degree in engineering, and has past work experience as a logistics engineer. (Dkt. No. 11, Administrative Record ("AR") 28, 44, 295.)

Plaintiff suffered a cerebrovascular accident/stroke in late 2020 and has a BMI of 42. (AR 20, 22.) Plaintiff alleged that he suffers from major cognitive disorder, cognitive vascular impairment, depression, anxiety, difficulty comprehending written material, difficulty writing, impaired attention, significant personality change, and memory loss. (AR 378.) Plaintiff also reported that he suffers from back, body, and skin pain, severe tinnitus, fatigue, weakness, tingling and stinging in his hands and feet, side effects from medications, headaches, and difficulty standing, walking and rising from kneeling and sitting positions. (AR 21, 49-53, 57.)

///
///
///

III. **PROCEEDINGS BELOW**

    A.    **Procedural History**

Plaintiff filed his application for DIB on July 14, 2021, alleging disability beginning on December 17, 2020.[3] (AR 17, 295-303.) Plaintiff's application was denied initially on December 8, 2021, and on reconsideration on May 27, 2022. (AR 167-72, 174-80.) Thereafter, Plaintiff filed a written request for hearing. (AR 181-83.) A telephone hearing was held before Administrative Law Judge David Lacy ("the ALJ") on August 22, 2023. (AR 36-67.) Plaintiff, assisted by a non-attorney representative, appeared and testified at the hearing, as did a vocational expert. (AR 17, 36-67.) On November 13, 2023, the ALJ issued a decision concluding that Plaintiff was "not disabled" within the meaning of the Social Security Act from December 17, 2020, through the date of the decision. (AR 17-29.) The Appeals Council denied review on June 26, 2024. (AR 1-6.)

Plaintiff filed a Complaint in District Court challenging the ALJ's decision denying benefits on August 17, 2024. (Dkt. No. 3.) On October 21, 2024, Defendant filed an Answer, as well as a copy of the Certified Administrative Record. (Dkt. No. 11.) Plaintiff filed an Opening Brief (Dkt. No. 13) on November 20, 2024, Defendant filed a Responsive Brief (Dkt. No. 19) on March 4, 2025, and Plaintiff filed a Reply on March 18, 2025. The case is ready for decision.[4]

---

[3] Plaintiff previously filed an application for DIB and was found disabled beginning on July 15, 2011. (AR 17, 119.) Plaintiff's disability status was terminated in 2015, when Plaintiff successfully returned to work. (AR 17.) The ALJ determined that the non-disability finding was not entitled to res judicata effect because Plaintiff's current claim for DIB was based, in part, upon the residual effects of a cerebrovascular accident that occurred in late 2020. (AR 18); see Soc. Sec. Admin. Acquiescence Ruling 97-4(9).

[4] The parties filed consents to proceed before a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment. (Dkt. Nos. 8 & 9.)

**B.     Summary of ALJ Decision After Hearing**

In the Decision (AR 17-29), the ALJ followed the required five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.[5]  See 20 C.F.R. § 404.1520(a).

The ALJ determined Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2026.  (AR 20.)  At **step one**, the ALJ found Plaintiff had not been engaged in substantial gainful activity since December 17, 2020, the alleged onset date.  (Id.)  At **step two**, the ALJ found that Plaintiff had the following severe impairments: status post acute cerebellar stroke with residual vascular neurocognitive impairment, major depressive disorder (recurrent), and generalized anxiety disorder.  (Id.)  At **step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings").  (AR 22.)  The ALJ found that Plaintiff had the RFC[6] to perform work at all exertional levels, but with the following nonexertional limitations:

> [Plaintiff] is limited to understanding, remembering and carrying out simple instructions and simple work-related decisions.  He can frequently interact with supervisors and coworkers, but may have no

---

[5] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.  Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.  Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.  Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.  Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.  See 20 C.F.R. § 404.1520.

[6] An RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See 20 C.F.R. § 404.1545(a)(1).

> public interaction.  He can deal with frequent changes in [ ] routine work, but [he] must avoid workplace hazards.

(AR 23.)  At **step four**, the ALJ found Plaintiff was unable to perform his past relevant work as a logistics engineer.  (AR 28.)  At **step five**, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, considering Plaintiff's age, education, work experience and RFC, specifically polisher, hand packer, and vehicle cleaner.  (Id.)  Accordingly, the ALJ determined Plaintiff was not disabled from December 17, 2020, through the date of the decision, November 13, 2023.  (AR 29.)

## IV. ANALYSIS

### A. Issues on Appeal

Plaintiff raises the following issues: (1) whether the ALJ failed to properly develop the record; (2) whether the ALJ failed to address the combination of Plaintiff's impairments in the RFC assessment; (3) whether the ALJ failed to properly apply the Medical-Vocational Guidelines; (4) whether the ALJ properly identified other jobs that could be performed consistent with the combination of Plaintiff's impairments; and (5) whether the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's symptom testimony. (Dkt. No. 13 at 7-18.)

### B. Standard of Review

A United States District Court may review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g).  The District Court is not a trier of the facts but is confined to ascertaining by the record before it if the Commissioner's decision is based upon substantial evidence.  See Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)).  A court must affirm an ALJ's

findings of fact if they are supported by substantial evidence and if the proper legal standards were applied.  See Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended).  An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence.  Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted).  "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ.").  However, the Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless, that is, if it is "'inconsequential to the ultimate nondisability determination,'" or if "'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended) (citation omitted); Molina v. Astrue, 674 F.3d 1104, 1115 (9th

Cir. 2012), superseded by regulation on other grounds as stated in Smith v. Kijakazi, 14 F.4th 1108, 1111 (9th Cir. 2021).

### C. The ALJ Fully and Fairly Developed the Record

Plaintiff argues that the ALJ failed to develop the record regarding his physical limitations by failing to obtain and include in the administrative record a recent function evaluation report and medical records from Kaiser. (Dkt. No. 13 at 7-8, Exh. A.)

#### 1. Waiver

To begin, the Court addresses the Commissioner's argument that Plaintiff waived any issue regarding his physical impairments because he "never alleged disability due to his physical limitations[ ] but solely focused on his cognitive impairments." (Dkt. No. 19 at 9.) Relying on Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999), the Commissioner asserts: "at least when Plaintiffs are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." (Dkt. No. 19 at 9.) Plaintiff, however, appeared at the administrative hearing with a non-attorney representative. (AR 17.) The Commissioner cites no case law extending Meanel to non-attorney representatives. See Streeter v. Saul, 2020 WL 58288, at *6, n.5 (E.D. Cal. Jan. 6, 2020) (rejecting the Commissioner's argument that Plaintiff waived the ability to challenge the ALJ's findings at step five because Plaintiff's non-attorney representative failed to pose a hypothetical question to the VE at the hearing), Parent v. Astrue, 2011 WL 13136530, at *3 (D. Mont. Aug. 15, 2011) ("Because [the plaintiff] was assisted by a non-attorney representative, rather than [an] attorney, the Court will not go so far as to definitively say that [the plaintiff] has waived his right to raise this argument on appeal."). Further, contrary to the Commissioner's argument, Plaintiff

preserved the issue regarding his physical limitations by testifying about his physical impairments at the administrative hearing. (AR 42, 49-50.) Finally, "an ALJ is to be expected, without issue-specific prompting by the parties, to make the predicate findings that are necessary under the governing five-step disability evaluation process to support the conclusions that the ALJ makes." Obrien v. Bisignano, 142 F.4th 687, 699 (9th Cir. 2025); Sims v. Apfel, 530 U.S. 103, 110-11 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits[.]"). The same logic applies here. The record may be incomplete or ambiguous without regard to Plaintiff's explicit request for further development of the record. See Labuga v. Comm'r of Soc. Sec., 2025 WL 1911690, at *6 (E.D. Cal. July 11, 2025) ("[T]he ALJ's duty to develop the record does not need to be talismanically preserved in the administrative hearing."). Accordingly, the Court will address the merits of this claim.

### 2. Applicable Law

"The ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered … even when the claimant is represented by counsel.'" Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). A claimant, however, retains the burden of proving that he is disabled. See Mayes, 276 F.3d at 459. The ALJ's "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Id. at 459-460 (rejecting the argument that the ALJ breached his duty to develop the record as an impermissible attempt to shift the burden of proving disability away from the claimant).

### 3. Analysis

#### a) Kaiser Records

Plaintiff complains that the ALJ should have developed the record further by obtaining his Kaiser medical records relating to a spinal condition. (Dkt. No. 13 at 7-8; AR 747.) Plaintiff asserts that the ALJ erred because one of his doctors, Dr. Cordell, reported that Plaintiff's "Kaiser records show that his spinal condition interfered with the possibility of having a lumbar puncture." (Dkt. No. 13 at 7-8 (citing AR 747).) However, a review of Dr. Cordell's medical report, which was prepared in June 2021, reveals that the referenced Kaiser records and attempted lumbar puncture predated Plaintiff's alleged onset date of disability, December 17, 2020, by about four years. (AR 747.) Dr. Cordell reported:

> I mention[ed] the possibility of having a lumbar puncture which [Plaintiff] thought might be useful but [he] mention[ed] that this was attempted by Kaiser 5 years ago unsuccessfully [because] of a spinal condition. He would not go into detail of why it was attempted but mentioned that there was nothing in his Kaiser record that is useful.

(AR 747.)

Plaintiff has failed to identify an ambiguity in the evidence or inadequacy in the record that the ALJ was obligated to resolve by developing the record further. Medical records that predate the alleged onset date of disability are ordinarily of limited relevance to evaluating a claimant's disability. See Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1165 (9th Cir. 2008). Given Plaintiff's statement that there was nothing useful in the Kaiser records and Plaintiff's demonstrated ability to work during the four-year period after the attempted lumbar puncture, Dr. Cordell's brief reference to the Kaiser records was insufficient to trigger the ALJ's duty to develop the record further. (AR 472-97, 747); see Mayes, 276 F.3d at 459-60.

### b) New Evidence Submitted to the Appeals Council

Plaintiff contends the Commissioner failed to properly consider and include in the administrative record new medical evidence that was prepared and submitted to the Appeals Council after the ALJ rendered the decision. (Dkt. No. 13 at 7-8.) Specifically, Plaintiff refers to a June 2024 VA functional capacity evaluation, which indicates that he is unable to stand for more than two hours and is limited to a reduced schedule of light work. (Id., Exh. A.) Plaintiff asks the Court to credit the VA functional capacity evaluation as true. (Id. at 8.)

When a claimant submits "new" and "material" evidence to the Appeals Council relating "to the period on or before the date of the [ALJ's] decision," the Appeals Council must consider the additional evidence if "there is a reasonable probability that the additional evidence would change the outcome of the decision" and there is "good cause" for the late submission. 20 C.F.R. § 404.970(a)(5), (b). When the evidence postdates the ALJ's decision, the Appeals Council may consider it if it is "related to" the period before the ALJ's decision. Taylor v. Comm'r Soc. Sec. Admin., 659 F.3d 1228, 1233 (9th Cir. 2011); Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162 (9th Cir. 2012) ("The Commissioner's regulations permit claimants to submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relates to the period on or before the ALJ's decision.").

Here, the VA functional capacity evaluation was prepared in June 2024, some seven months after the ALJ issued the decision. (Dkt. No. 13, Exh. A.) As this new evidence submitted to the Appeals Council postdates the ALJ's decision and there is no indication it pertains to the period under review, it is not material and does not render

1  the ALJ's decision unsupported by substantial evidence.  See 20 C.F.R. § 404.970(a)(5);
2  Taylor, 659 F.3d at 1233; see also Bruton v. Massanari, 268 F.3d 824, 827 (9th Cir.
3  2001) (explaining that new evidence is "material" under 42 U.S.C. § 405(g) if it "bear[s]
4  directly and substantially on the matter in dispute, and if there is a reasonabl[e]
5  possibility that the new evidence would have changed the outcome of the …
6  determination" (internal quotation marks and citation omitted)).

**D. Plaintiff's RFC**

Plaintiff asserts that the ALJ erred in determining his RFC by failing to address the effects of all of his impairments, including lumbar radiculopathy, obesity, migraines, and leukoencephalopathy.  (Dkt. No. 13 at 8-11, 14-17.)

    **1.**    **Applicable Law**

"[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015). The ALJ must consider all the relevant evidence, but the RFC determination need not precisely reflect a specific medical opinion.  See 20 C.F.R.§ 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); see also Mills v. Comm'r of Soc. Sec., 2014 WL 4195012, *4 n.8 (E.D. Cal. Aug. 22, 2014) ("[I]t is the ALJ's responsibility to formulate an RFC that is based on the record as a whole, and thus the RFC need not exactly match the opinion or findings of any particular medical source.").  "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).  The ALJ's RFC assessment should be affirmed if the ALJ applied the proper legal standard and the decision is supported by substantial evidence in the record.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005)

("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary.").

### 2. Analysis

The ALJ acknowledged that Plaintiff had been diagnosed with progressive vascular leukoencephalopathy, L5 radiculopathy, morbid obesity, and occasional headaches associated with hypertension. (AR 20-22.) Although Plaintiff cites medical records describing these various conditions, he has not shown how such evidence translates into any specific functional limitations. See Houghton v. Comm'r Social Sec. Admin., 493 F. App'x 843, 845-46 (9th Cir. 2012) (explaining that the ALJ was not required to discuss plaintiff's depression, a heart condition, sleep apnea, a right heel injury, diabetes with neuropathy in the right leg, or obesity "in the absence of significant probative evidence that they had some functional impact on [plaintiff's] ability to work"). The mere diagnosis of an impairment, without more, does not establish that the impairment was severe or disabling. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability."); see also 20 C.F.R. § 404.1522(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Thus, Plaintiff has failed to show that the RFC assessment is incomplete or unsupported by substantial evidence.

Plaintiff also complains that the ALJ erred by not designating obesity as a severe impairment and by failing to consider obesity in combination with his other impairments, as required by Social Security Regulation ("SSR") 19-2p (providing guidance on how the SSA evaluates obesity in disability claims). (Dkt. No. 13 at 10.) In the decision, the ALJ acknowledged that while Plaintiff's BMI of 42 fell within the

"morbid obese classification," there was no evidence that Plaintiff's weight limited his ability to engage in activities, such as sitting, standing, walking, moving, or exercising a full range of motion. (AR 22.) The ALJ also considered the functional effects of Plaintiff's obesity combined with other impairments and determined that Plaintiff had not demonstrated how his obesity – either on its own or considered in combination with his impairments – impacted his ability to perform work or other tasks. (Id.) While Plaintiff disagrees with the ALJ's findings in connection with his obesity, he fails to demonstrate error warranting remand.

Plaintiff further contends the ALJ erred in finding he could perform work at all exertional levels. (Dkt. No. 13 at 6, 14.) Plaintiff refers to the VA functional capacity evaluation to show that he should be limited to performing light work on a part-time basis. (Id. at 6, Exh. A.) As discussed above, however, the VA functional capacity evaluation postdates the ALJ's decision and there is no indication that it pertains to the relevant period. See Brewes, 682 F.3d at 1162. As Plaintiff does not point to any medical evidence showing that he was limited to performing light work during the period under review, Plaintiff has failed to meet his burden of demonstrating that the RFC is insufficiently restrictive. See 20 C.F.R. § 404.1512(a); Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020) ("The burden of proof is on the claimant at steps one through four."). In sum, there is substantial evidence supporting the ALJ's analysis of Plaintiff's impairments and RFC determination.

**E.  The Medical-Vocational Guidelines**

Plaintiff contends the ALJ misapplied the Medical Vocational Guidelines ("the grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, at step five. (Dkt. 13 at 11-14). Plaintiff asserts that the ALJ improperly considered his age at the time of his alleged disability

onset (59 years old), which is defined as "an individual of advanced age," instead of his age at the time of the ALJ's decision (62 years old), which qualifies as a person "closely approaching retirement age." (Id. at 12.)

1. **Applicable Law**

Generally, the claimant's age as of the time of the decision governs in applying the grids.  See Russell v. Bowen, 856 F.2d 81, 84 (9th Cir. 1988); Dattilo v. Berryhill, 773 F. App'x 878, 881-82 (9th Cir. 2019) (finding error because the ALJ "considered [the claimant's] age at the time of alleged disability onset (51 years old), not age at the time of final decision (54 years old) as required").

"For purposes of applying the grids, there are three age categories: younger person (under age 50), person closely approaching advanced age (age 50-54), and person of advanced age (age 55 or older)." Lockwood v. Comm'r Social Sec. Admin., 616 F.3d 1068, 1071 (9th Cir. 2010) (citing 20 C.F.R. § 404.1563(c)-(e)).  "[F]or individuals of advanced age who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, or who have no work experience, the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled." 20 C.F.R. § Pt. 404, Subpt. P, App. 2, 202.00(c).

Special transferability of skills rules apply to individuals in the advanced age category who are also closely approaching retirement age (age 60 or older).  See 20 C.F.R. §§ 404.1563(e), 404.1568(d)(4).  If a claimant is closely approaching retirement age and is limited to no more than light work, the Commissioner "will find that [he has] skills that are transferable to skilled or semiskilled light work only if the light work is so

similar to [his] previous work that [he] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.").

If a claimant is closely approaching retirement age (age 60 or older), is limited to no more than medium work, and has "a work history of unskilled work [ ] with marginal education or less, a finding of disabled is appropriate." 20 C.F.R. § Pt. 404, Subpt. P, App. 2, 203.00(c).

### 2.  Analysis

Here, although the ALJ considered Plaintiff's age at the time of the alleged onset of disability when applying the grids, any error was harmless. See, e.g., Dattilo, 773 F. App'x at 881-82 (holding that the ALJ erred by considering the plaintiff's age at the time of the alleged disability onset rather than at the time of final decision, but finding the error was harmless because the plaintiff still fell into the "approaching advanced age" category regardless of the age used); see also Brown-Hunter, 806 F.3d at 492.  While Plaintiff was over 60 years old on the date of the decision, the rules applying to individuals limited to light work, including the special rules pertaining to individuals closely approaching retirement age, did not apply because the ALJ found Plaintiff had the RFC to perform work at all exertional levels.  (AR 23); 20 C.F.R. §§ 404.1563(e), 404.1568(d)(4), Pt. 404, Subpt. P, App. 2, 202.00(c).  As discussed, Plaintiff has failed to show the ALJ erred in assessing his RFC.  Further, even if the ALJ had found Plaintiff was limited to medium work, Plaintiff would not have been disabled under the grids, as he had a history of performing skilled work and at least a high school education.  (AR 28, 44); see 20 C.F.R. § Pt. 404, Subpt. P, App. 2, 203.06.  Thus, any error in the ALJ's application of the grids does not warrant remand.

**F. The ALJ Did Not Err At Step Five**

Plaintiff contends that the ALJ erred at step five by relying on an RFC assessment that did not account for all of Plaintiff's limitations. (Dkt. 13 at 14-18.) Once again, Plaintiff asserts that the RFC assessment did not address the combination of Plaintiff's impairments (i.e., including difficulty with standing, walking, sitting, reading, writing, counting, short-term memory, and understanding and following directions). (Id.) As noted above, however, Plaintiff has not produced evidence establishing the existence of any conditions limiting his ability to undertake work-related physical activities. See 20 C.F.R. § 404.1522(b) (stating that "basic work activities" include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"). The ALJ also properly considered Plaintiff's neurocognitive and intellectual deficits in formulating the RFC. (AR 20-21, 23-29.) The ALJ included in the RFC assessment those limitations found credible and supported by substantial evidence, including restrictions to understanding, remembering and carrying out simple instructions and simple work-related decisions, no public interaction, and no exposure to workplace hazards. (AR 23.) Plaintiff's suggestion that the ALJ erred by failing to include additional limitations in the RFC determination is not persuasive. While the RFC assessment did not account for all of the limitations described during Plaintiff's testimony, the ALJ properly discounted his testimony, as discussed below. (AR 23, 27-28.) Plaintiff fails to establish that the step five determination is flawed by simply restating an argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Next, Plaintiff contends the ALJ erred at step five in determining he could perform other work because the three jobs identified by the VE (hand packer, polisher, and vehicle cleaner) are "classified as loud" and Plaintiff "has difficulty with noise." (Dkt. No. 13 at 17.) In support of this argument, Plaintiff notes that the VE testified that the three jobs could not be performed if there was a restriction to no exposure "to noise environments greater than moderate level 3." (AR 64-65.) However, Plaintiff's argument disregards the ALJ's findings that the medical evidence did not establish the presence of a medically determinable, severe ear condition or hearing impairment and Plaintiff's RFC assessment did not include any noise restrictions. (AR 21, 23.) Plaintiff has failed to show the ALJ erred in making these findings. As such, Plaintiff has not demonstrated that the ALJ's step five determination warrants remand.

**G. Plaintiff's Testimony**

Plaintiff contends the ALJ failed to provide specific, clear and convincing reasons for disregarding his subjective symptom testimony. (Dkt. No. 13 at 18.)

    **1.    Applicable Law**

Where a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, the ALJ must provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." Treichler v. Comm'r, 775 F.3d 1090, 1102 (9th Cir. 2014) (internal quotation marks and citation omitted); Brown-Hunter, 806 F.3d at 493-94; see also 20 C.F.R. § 404.1529(a). "The standard isn't whether [the federal] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." Smartt v. Kijakazi, 53 F.4th 489, 500 (9th Cir. 2022); see also Garrison,

759 F.3d at 1015 (explaining that the clear and convincing standard "is not an easy requirement to meet").

The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001) (internal quotation marks and citation omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (internal quotation marks and citation omitted). But, if the ALJ's assessment of the testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Smartt, 53 F.4th at 500. The ALJ's finding may be upheld even if not all the reasons for rejecting the testimony are upheld. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).

### 2. Plaintiff's Testimony

Plaintiff testified that he suffered from a variety of conditions limiting his ability to work. (AR 47-61.) Plaintiff asserts the ALJ improperly rejected his statements that he had difficulty concentrating, "do[ing] calculations," understanding written material, and writing. (Dkt. No. 13 at 18 (citing AR 48).)

### 3. Analysis

Here, the ALJ cited affirmative evidence suggesting malingering. (AR 28.) Evidence of malingering is a sufficient basis upon which to reject Plaintiff's testimony. See Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003) (explaining the ALJ could reject the claimant's testimony only "upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so"); Baghoomian

v. Astrue, 319 F. App'x 563, 565 (9th Cir. 2006) ("evidence of malingering relieved the ALJ from the burden of providing specific, clear, and convincing reasons to discount [the claimant's] testimony"). The ALJ noted that Plaintiff's audiology/hearing evaluation report reflected Plaintiff's "attempted malingering in pure tone audiometry." (AR 28, 1661.) The ALJ also cited treatment notes indicating that Plaintiff amplified his symptoms. (AR 28, 1122 (noting Plaintiff "tended to symptom amplify during the intake and on self-report questionnaires (i.e., endorsing severe symptomology for almost all questions)"), 1209.) While the ALJ acknowledged that Plaintiff's malingering "was likely a cry for help," the ALJ observed that it raised "concern regarding the consistency of his disability claim." (AR 28.)

The record also reflects that the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's subjective complaints, though Plaintiff does not acknowledge them. (AR 27-28.) The ALJ used "ordinary techniques of credibility evaluation," such as pointing out inconsistencies in Plaintiff's statements concerning his symptoms. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (citations and internal quotation marks omitted). Plaintiff's neuropsychologist observed that while Plaintiff complained of "significant difficulties with reading," he stated at the end of the neuropsychological evaluation that he had "read a lot about strokes and believes he suffers from executive dysfunction." (AR 28, 1122, 1209.) The ALJ also cited inconsistencies between Plaintiff's claimed disability and admitted activities, such as designing and building a laundry room in his home. (AR 27, 1733); see Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."). Although Plaintiff claimed the laundry room project, which took six

months to complete, would have been finished in only three weeks before his disability, the ALJ reasonably concluded that Plaintiff's admitted activities were "not consistent with an individual mentally effectively [sic] incapable of engaging in even simple routine tasks." (AR 27.) The ALJ also noted that Plaintiff submitted a work background report "encompassing an extensive [26-page], detailed and comprehensive explanation of his past relevant work experiences and the physical demands, duties and requirements" of each job. (AR 27, 472-97.) The ALJ reasonably concluded that Plaintiff's ability to author "this comprehensive report" undermined his assertion that he was "so mentally infirm that he lacks the mental capacity to perform a range of simple routine tasks." (AR 27); see Ghanim, 763 F.3d at 1165. Thus, the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's testimony regarding his symptoms and the extent of his limitations.

**V.     CONCLUSION**

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED, and the action is DISMISSED with prejudice. Judgment shall be entered accordingly.

DATED:  September 17, 2025

                                                  /s/ Autumn D. Spaeth
THE HONORABLE AUTUMN D. SPAETH
United States Magistrate Judge